FILED
01 SEP -6 AM 8:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 0 6 2001

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| VIVIAN D. RAWLS, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-00-N-0093-E |
| COOPER CHEVROLET, INC., | ] |
| Defendant(s). | ] |

**Memorandum of Opinion**

**I.    Introduction.**

Defendant Cooper Chevrolet, Inc. ("Cooper") has moved for summary judgment against Plaintiff Vivian Rawls ("Rawls"). (Doc. # 47, filed November 3, 2000). Rawls has moved the court to certify a class of plaintiffs under the provisions of Federal Rule of Civil Procedure 23(b). (Doc. # 51, filed November 6, 2000). The issues have been fully briefed by both parties and are now ripe for decision. Upon due consideration, Cooper's motion for summary judgment will be **GRANTED**. The action will be dismissed with prejudice and Rawls' motion for class certification becomes **MOOT**.

**II.   Background.**

Cooper is an Alabama corporation with its principal place of business in Anniston, Alabama. On May 21, 1994, Rawls purchased a 1994 Chevrolet Cavalier from the defendant. (Pl. Compl., ¶ 2). In connection with the purchase, the plaintiff executed a retail installment

contract provided to her by Cooper (and later assigned to AmSouth Bank, Inc.)[1] to finance her acquisition of the automobile. (Doc. # 48, ¶ 1, Doc # 56, ¶ 1). As the contents of this document form the basis of this lawsuit, a brief description is warranted.[2]

The retail installment contract begins by providing the names and addresses of the parties, a description of the transaction and its subject matter, and the price and monthly installment payments agreed to by the parties. Below this information is a box with the heading FEDERAL TRUTH-IN-LENDING DISCLOSURES, in which appear the annual percentage rate, the finance charge, the amount financed, the total of the payments, and the total sale price. Beneath this is the purchaser's payment schedule, including number of payments, amount, and when the payments are due; followed by notice to the purchaser that the seller is retaining a security interest in the automobile being purchased, that the purchaser is being charged $16.50 in filing fees, and additional pre- and late-payment information.

Next appears the heading ITEMIZATION OF AMOUNT FINANCED, beneath which are five separate sections. Relevant here is section 4: "Amounts Paid to Others on Your Behalf." This section contains three entries. The first entry delineates a charge of $634.35 for "Costs of Optional Credit Insurance for the Term of this Contract"; specifically labeled in the agreement as Disability. The second entry delineates a charge of $16.50 for "UCC Filing Fees or Certificate of Title Fees." The third entry delineates a charge of $650.00 for

---

[1] Originally, plaintiff named four defendants in her lawsuit, including AmSouth Bank, Inc. AmSouth apparently reached a pro tanto settlement with the plaintiff prior to the action being removed to federal court. (Doc. # 1, ¶ 1).

[2] All references to the retail installment contract refer to Doc. # 50, tab 1, Ex. A; and Doc. # 56, tab. 1.

2

"Other Charges (Seller must identify who will receive payment and describe purpose)"; specifically labeled in the agreement as SERVICE CONTRACT.[3]

The agreement then reads as follows: "Optional Credit Insurance. If you want, if you qualify, and if we offer it for this sale, we may obtain credit life insurance and/or disability insurance on you. Credit insurance is not required to obtain and will not be provided unless you sign the disclosure statement below, next to the type of insurance you want, and agree as part of the contract to pay the additional cost of the insurance." The disclosure statement contains two sections, one headed "Credit Life" and one headed Disability. In the Disability section, an entry of $634.36 is made for the premium, and next to the language "I want credit disability insurance" appears the plaintiff's signature. The contract concludes with additional boilerplate language, followed by the parties' signatures at the bottom of the agreement. Above the signatures is the following caveat: CAUTION–IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

For reasons not attributable to the defendant, the plaintiff did not read the contract. (Doc. # 50, tab 2, pp. 32-33).[4] Instead, she placed the document in the glove compartment of her new automobile, where it remained until September of 1998, when she returned to the defendant for repairs. (Doc. # 50, tab 2, pp. 235-36). According to the plaintiff, the

---

[3] The "others" referenced by the agreement are MIC Life Insurance Corp, as the provider of the Credit Disability Insurance, and Continental Insurance Company, Inc., as the provider of the service contract. Both parties were initially named in plaintiff's lawsuit, but were later dismissed in accordance with the court's order of January 19, 2000. (Doc. # 3).

[4] The defendant's evidentiary submissions, coupled with the plaintiff's admissions, establish to the court's satisfaction that the plaintiff was capable of reading the agreement, and that the defendant did not hinder plaintiff's efforts to read the agreement or instruct her not to read the agreement. The plaintiff simply appears to have chosen not to read the agreement. (Doc. # 50, tab 2, p. 32-33).

defendant promised that the cost of the repairs would be covered under the service contract. When the plaintiff sought reimbursement, however, the defendant refused. (Pl. Comp. ¶¶ 13, 14, 22, 23). Subsequently, she initiated this action in the Circuit Court of Calhoun County, Alabama, on May 11, 1999. Her complaint asserted numerous state law causes of action and class action status, and named as defendants Cooper, AmSouth Bank, MIC Life Insurance Corporation, and Continental Insurance Company. Her first amended complaint, filed September 21, 1999, asserted four additional state law causes of action. In her second amended complaint, filed December 16, 1999, plaintiff claimed violations by defendant Cooper of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226.18. The alleged violations occurred when Cooper failed to disclose in the retail installment contract that it was retaining for itself a portion of the credit disability insurance and the service contract charges.[5]

Following a joint removal of the action by the defendants, the court (Buttram, J.) remanded all the claims to the Circuit Court of Calhoun County, except for the TILA claim against Cooper. (Doc. # 3). Now pending before the court[6] are the defendant's motion for summary judgment and plaintiff's motion for class certification.

**III.    Standard.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[5] Specifically, the defendant retained $348.90 of the $634.46 charged for credit disability insurance, and $232.00 of the $650.00 charged for the service contract. (Doc. # 56, ¶¶ 11, 12).

[6] The action has since been reassigned to the undersigned, following Judge Buttram's recusal. (Doc. # 9, 10).

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.    Discussion.

The basis upon which the defendant seeks summary judgment is its contention that the federal claim is barred by the TILA statute of limitations. Plaintiff brings her TILA claim pursuant to the civil liability provision of 15 U.S.C. § 1640. Viable claims under this section are limited to those brought "in any United States district court, or in another court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The date of the occurrence of the violation is not at issue here. "It is well-settled that in closed-end credit transactions,[7] like the one at issue, the date of the occurrence of violation is no later than the date the plaintiff enters the loan agreement or,

---

[7] The District Court of Connecticut offers a detailed explanation of closed-end credit transactions:
In [closed-end credit transactions], the finance charge is divided into the term of the loan and incorporated into time payments. As a general rule the disclosures required by the [Truth and Lending Act] are revealed to the consumer at the time the contract for the extension of credit is executed or, at the very latest, at the time of performance. Thus there is a specific time at which a violation occurs and a court can use that occurrence as the point from which the limitation period begins to run.

*Baskin v. G. Fox & Co.*, 550 F. Supp. 64, 66 (D. Conn. 1982).

6

possibly, when defendant performs by transmitting the funds to plaintiffs." *Cardiello v. The Money Store*, 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001) (citing *Salois v. Dime Sav. Bank*, 128 F.3d 20, 25 (1st Cir. 1997); *King v. California*, 784 F.2d 910, 914 (9th Cir. 1986); *K/O Ranch, Inc. v. Norwest Bank of Black Hills*, 748 F.2d 1246, 1248-49 (8th Cir. 1984); *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984)); *see also Ellis v. GMAC*, 160 F.3d 703, 705-06 (11th Cir. 1998).

On May 21, 1994, the plaintiff entered into a retail installment contract that made funds available to her with which she purchased the automobile. As a contract contemplating a closed-end credit transaction, any alleged TILA violations arising from it became actionable for a period of one year from that day. *See* 15 U.S.C. § 1640(e). The plaintiff initially commenced this action on May 11, 1999. She did not file her TILA claim until December 16, 1999. Neither date falls within the statute of limitations. Plaintiff contends, however, that the doctrine of equitable tolling is applicable to the facts of this case and preserves her claim against the statutory bar.

The doctrine of equitable tolling has deep roots in American jurisprudence. *See, e.g., Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 347-49 (1874). It permits plaintiffs to "sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. GMAC*, 160 F.3d at 706. "This equitable doctrine is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). TILA is no exception. *See Ellis v. GMAC*, 160 F.3d 706-08 (and cases cited).

How a statute of limitations is equitably tolled depends upon a number of factors. First among them is the nature of the claim.

> For example, in *Bailey v. Glover*, the Court described two situations in which the strict letter of general statutes of limitation would not be followed. The first situation is where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts, and the second is where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part. The former involves fraudulent concealment; the latter defines undiscovered fraud. The Court concluded in *Bailey* that fraudulent concealment . . . tolls the running of the statute of limitations when the fraud has been concealed, or is of such character as to conceal itself. To hold otherwise, reasoned the Court, would make the law which was designed to prevent fraud the means by which it is made successful and secure.

*Taylor v. Freeland & Kronz*, 503 U.S. 638, 647 (1992) (Stevens, J., dissenting). Of equal importance are the actions of the plaintiff and the defendant respectively as to the maintenance of the action. For example, diligence on the part of the plaintiff in ascertaining the presence of an action may be required if the statute sought to be tolled encourages investigative diligence by a putative plaintiff. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195-96 (1997) (requiring the exercise of due diligence on the part of the plaintiff to equitably toll civil RICO actions); *cf. McKnight v. Taylor*, 42 U.S. (1 How.) 161, 168 (1843) ("There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court.); *Benedict v. New York*, 250 U.S. 321, 328 (1919) (upholding the defense of laches where the " lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence."). As to the defendant, "[c]oncealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Wood v. Carpenter*, 101 U.S. 135, 143 (1879). Specifically in the context of TILA, fraudulent conduct beyond the non-disclosure itself must exist to equitably toll the running of the statute of limitations. *See, e.g., Cardiello v. The Money Store*, 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001); *Pettola v. Nissan Motor*

*Acceptance Corp.*, 44 F. Supp. 2d 442, 450 (D. Conn. 1999); *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1184 (D. Minn.1999); *Jones v. Saxon Mortg.*, 980 F. Supp. 842, 846 (E.D. Va. 1997); *Kicken v. Valentine Production Credit Ass'n*, 628 F. Supp. 1008, 1011 (D. Neb. 1984); *Hughes v. Cardinal Fed. Sav. & Loan Ass'*, 566 F. Supp. 834, 838 (S.D. Ohio 1983); *but see In re Consolidated Non-Filing Ins. Fee Litigation*, 195 F.R.D. 684, 693-94 (M.D. Ala. 2000).

The crux of plaintiff's argument is simple and straightforward: even if she had read the retail installment contract – which she admittedly did not – she would have been no better off than she was, having not read it. (Pl. Mem. Law, filed November 24, 2000). In support of this position she directs the court to the maxim "equity does not require the doing of a vain thing as a condition of relief." *Gibson v. Board of Public Instruction*, 246 F.2d 913, 914 (5th Cir. 1957). The court is unpersuaded.

The only evidence in the record of fraudulent conduct by the defendant is its failure to properly disclose the fact that it was retaining a portion of the charges paid to others. Such behavior is actionable under 15 U.S.C. § 1640, if brought within one year of the date of the occurrence of the violation. The plaintiff would have the court use this same behavior as a basis for tolling the statute. But to apply equitably tolling principles on that ground alone would render the one-year statute of limitations in 15 U.S.C. § 1640(e) a nullity. This the court will not do.

Moreover, the express purpose of TILA envisages obligations on the part of a putative plaintiff to do more than blindly sign on the dotted line. One of the express Congressional purposes of TILA is "to assure a meaningful disclosure of credit terms so

9

that the consumer will . . . avoid the uninformed use of credit." 15 U.S.C. § 1601(a). *See also Mourning v. Family Publications Serv.*, 411 U.S. 356, 364 (1973) (noting that "blind economic activity is inconsistent with the efficient functioning of a free economic system . . . whose ability to provide desired material at the lowest cost is dependent on the asserted preferences and informed choices of consumers."). Thus, not only does the great weight of the case law go to counter the plaintiff's argument that she would not have discovered the fraud even if she had read the contract, but so too does TILA itself.

**V.     Conclusion.**

The court therefore finds the facts of this case inappropriate for the doctrine of equitable tolling. The action was brought outside the applicable period of limitations. Accordingly, Cooper's motion for summary judgment is due to be **GRANTED**. The plaintiff's motion for class certification is **MOOT**. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). A separate order conforming to this memorandum will be entered.

Done, this ___4th___ of September, 2001.

EDWIN NELSON
UNITED STATES DISTRICT JUDGE

10